**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Miscellaneous Case No. 21-mc-00090-PAB-STV

GERALD R. SCHELL, M.D.,

    Plaintiff,

v.

AMENDIA, INC.,

    Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Nonparty Jeffrey R. Schell, Esq.'s Motion to Modify Nonparty Subpoena and for Protective Order (the "Motion"). [#1] The Motion has been referred to this Court. [#3] This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist the Court. For the following reasons, the Court **ORDERS** that the Motion be **TRANSFERRED** to the United States District Court for the Northern District of Georgia.[1]

---

[1] "The issue of whether to transfer a motion . . . [regarding] a subpoena to the court having jurisdiction over the underlying case is a non-dispositive matter." *In re Cassell*, No. 15CV07433RWSSDNY, 2016 WL 3645166, at *1 (D. Utah June 30, 2016); *see also Weddle v. Williams*, No. 18-mc-00225-RBJ-KLM, 2019 WL 1620815, at *1 n.2 (D. Colo. Apr. 15, 2019) (finding transfer of subpoena-related motion to be a non-dispositive matter pursuant to 28 U.S.C. 636(b)(1)(A)); *San Juan Cable LLC v. DISH Network LLC*, No. 14-mv-00261-RM-MJW, 2015 WL 500631, at *2 (D. Colo. Jan. 23, 2015); *United States v. Roy*, No. 18-20898-MC, 2018 WL 1894731, at *1 n.1 (S.D. Fla. Mar. 21, 2018) (collecting cases).

**I.      BACKGROUND**

      **A.      The Underlying Lawsuit**

On July 21, 2017, Gerald R. Schell, M.D. ("Dr. Schell") filed a lawsuit in the United States District Court for the Northern District of Georgia against Amendia, Inc. ("Amendia"), *Schell v. Amendia, Inc.*, No. 17-cv-02761-MLB (N.D. Ga. 2017) (the "Underlying Case").[2] [Underlying Case, #1]  Dr. Schell is a neurosurgeon with a special expertise in the use and design of spinal implant equipment.  [*Id.* at ¶¶ 6, 8]  Amendia is a medical device company engaged in the manufacture and sale of devices utilized in spinal surgery, with a substantial portion of its business related to spinal implant devices and associated instruments.  [*Id.* at ¶ 7]  According to the Complaint, in or around 2009, Amendia and Dr. Schell began collaborating to design and/or develop medical devices that Amendia would then manufacture and sell.  [*Id.* at ¶ 9]  In connection with this collaboration, Amendia and Dr. Schell entered into three separate royalty agreements—one each in 2009, 2010, and 2011.  [*Id.* at ¶¶ 10-39]  The Complaint asserted the following causes of action against Amendia:  (1) breach of the 2009 agreement, (2) breach of the 2010 agreement, (3) breach of the 2011 agreement, (4) services performed and expenses incurred, (5) declaratory judgment regarding the royalty payments owed under the agreements going forward, (6) declaratory judgment regarding patent rights and ownership, and (7) an accounting.  [*Id.* at ¶¶ 44-84]  On September 20, 2017, Amendia filed a motion to dismiss Counts One, Two, Five, and Six.  [Underlying Case, #15]

---

[2] On August 2, 2017, Dr. Schell filed an amendment to the Complaint, which "delet[ed] the exhibits to the Complaint as originally filed and replac[ed] them." [Underlying Case, #6]

2

On January 23, 2018, the Underlying Case was reassigned to Judge Michael L. Brown.  [Underlying Case Docket]  On October 31, 2019, Judge Brown issued an order granting in part and denying in part Amendia's motion to dismiss, which dismissed Count Two to the extent it was based upon a claim for indemnity regarding certain products, Count Five, and Count Six.  [Underlying Case, #32]  Judge Brown conducted a Scheduling Conference in the case on November 20, 2019, at which the scope of permissible discovery in the case was discussed and issued a Scheduling Order the next day.  [Underlying Case, #37, 38]  Judge Brown has conducted at least five hearings regarding the parties' discovery disputes [Underlying Case, #50, 58, 76, 79, 94] and has issued a protective order [#61].  On April 13, 2021, Judge Brown granted the parties' joint motion to extend unexpired deadlines, which extended the deadline to complete discovery until June 11, 2021 and extended all other unexpired deadlines by 60 days.  [Underlying Case, #97]

### B.     The Instant Motion

On March 26, 2021, Amendia served a subpoena on Jeffrey Schell ("Movant") pursuant to Federal Rule of Civil Procedure 45.  [#1 at 3; #1-2]  The subpoena noticed the deposition to take place by remote means on April 6, 2021.  [#1-2]  According to a declaration of Movant submitted with the Motion, Movant is an attorney who lives, works, and practices law in Denver, Colorado.  [#1-1, ¶¶ 1,3]  Movant, who is Dr. Schell's son, has provided legal representation to Dr. Schell; since 2009, Movant has advised Dr. Schell on contract and litigation issues, including Dr. Schell's claims against Amendia.  [*Id.* at ¶ 5]  When Dr. Schell suffered a heart attack in 2013, Movant "took over his affairs while he convalesced."  [*Id.* at ¶ 6]  From an unspecified date until 2017, Movant served

3

as the President and CEO of Quandary Medical, LLC ("Quandary"), a medical device manufacturer that competes with Amendia with regard to spinal devices. [*Id.* at ¶¶ 7-8] Since 2017, Movant has represented Quandary as patent counsel and has also advised Quandary on contract and litigation issues. [*Id.* at ¶ 9]

Amendia also served a Rule 45 subpoena on Quandary. On February 22, 2021, Quandary file a motion to quash the subpoena duces tecum in the United States District Court for the Northern District of Alabama, *In re Quandary Medical LLC*, No. 2:21-mc-00270-LSC (the "Quandary Action"). [Quandary Action, #1] Quandary's motion to quash argues that the documents sought from it by Amendia are not relevant to the Underlying Case because none of the claims or defenses in the Underlying Case "relate to Dr. Schell's conduct in 2017, and after, related to [Quandary]." [*Id.* at ¶ 29] The motion to quash also argues that the subpoena is overly broad, unduly burdensome, and seeks information protected from disclosure as proprietary information and pursuant to the attorney-client privilege, work product doctrine, and settlement communication privilege. [*Id.* at ¶¶ 35-37] Amendia filed its response to the motion to quash on April 14, 2021. [Quandary Action, #5]

On April 5, 2021, Movant filed the instant Motion, requesting that this Court issue a protective order (1) limiting the scope of questioning at Movant's deposition to questioning regarding nonprivileged information regarding the royalty agreements and devices at issue in the Underlying Case, including Movant's own communications with Amendia; and (2) prohibiting Amendia from asking Movant questions regarding Quandary, Movant's work for Quandary, or any medical devices developed by Quandary. [#1 at 14] On April 6, 2021, the Court issued an Order directing the parties to meet and

4

confer regarding whether the instant Motion should be transferred to the Northern District of Georgia pursuant to Federal Rule of Civil Procedure 45(f), which provides that a court "may transfer a motion [regarding a Rule 45 subpoena] . . . to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances," and to file a joint statement setting forth their respective positions on transfer. [#4]  On April 13, 2021, the parties filed their joint statement. [#5]  Movant does not consent to transfer and argues that no "exceptional circumstances" exist to justify the transfer. [*Id.* at 1-4]  Amendia argues that the Motion should be transferred pursuant to the "exceptional circumstances" provision of Rule 45(f).  The Court thus finds that the issue of transfer pursuant to Rule 45(f) is ripe for this Court's consideration and should promptly be resolved—prior to briefing on the merits of the substantive Motion—so that the Motion may be efficiently resolved in the appropriate forum.[3]

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 45(a)(2), "[a] subpoena must issue from the court where the action is pending."  With regard to a subpoena for a deposition of a nonparty, the place of compliance must be "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A).  "A party or attorney responsible for issuing and serving a subpoena must

---

[3] Notably, both this Court and Judge Brown have established discovery dispute procedures that attempt to reduce delay and inefficiency arising from discovery disputes by requiring the parties to submit discovery disputes to the court before formal motions are filed.  *See* Magistrate Judge Varholak's Practice Standards, *available at* http://www.cod.uscourts.gov/Portals/0/Documents/Judges/STV/STV_Civil_Practice_Standards.pdf?ver=2020-08-25-122321-913; Judge Brown's Standing Order Regarding Civil Litigation, *available at* http://www.gand.uscourts.gov/sites/default/files/Judge_Brown_Standing_Order.pdf.

take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and "[t]he court for the district where compliance is required must enforce this duty."  Fed. R. Civ. P. 45(d)(1).  "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden" and may quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(A), (B).

Pursuant to Rule 45(f), however, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under [Rule 45] to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."  The Federal Rules of Civil Procedure do not define "exceptional circumstances."  Accordingly, "[c]ourts applying Rule 45(f) routinely refer to the 2013 [Advisory Committee] Note's language in determining its scope."  *US Plywood Integrity Coal. v. PFS Corp.*, No. 20-5042 BHS, 2021 WL 409968, at *2 (W.D. Wash. Feb. 5, 2021) (collecting cases).  With regard to transfer upon a finding of exceptional circumstances, the 2013 Advisory Committee Note (the "2013 Note") states:

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present.  The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions.  In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts.  Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

"When considering if exceptional circumstances are present, the Court must account for the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Google, Inc. v. Digital Citizens All.*, No. MC 15-00707 JEB/DAR, 2015 WL 4930979, at *2 (D.D.C. July 31, 2015) (quotation omitted).

### III.   ANALYSIS

Amendia, as the proponent of transfer, "bears the burden of showing that [exceptional] circumstances are present."  *Weddle v. Williams*, No. 18-mc-00225-RBJ-KLM, 2019 WL 1620815, at *3 (D. Colo. Apr. 15, 2019) (alteration in original) (quoting the 2013 Note).  Amendia argues that "any interest in obtaining a local resolution is outweighed substantially by those supporting transfer," because (1) "Judge Brown has intimate knowledge of the complex matters at issue in the underlying litigation," (2) Judge Brown "already ruled that [Movant's] testimony is discoverable," and (3) "the time and energy required for this Court to [rule on the complex issues in dispute] would necessarily result in the needless use of scarce judicial resources." [#5 at 6-7]  The Court agrees.

The Underlying Case has been pending for over three and a half years and involves the interpretation of three separate royalty agreements. [Underlying Case, #1] Judge Brown has already resolved a Motion to Dismiss and has conducted five discovery hearings in the Underlying Case. [Underlying Case, #32, 50, 58, 76, 79, 94]  Indeed, Judge Brown has had so much involvement with the Underlying Case that he recently commented at a hearing: "I've lived with this case for more than a year now." [#5-2 at 24:24-25]  The Court thus finds that the duration and nature of the proceedings in the Underlying Case support transfer.  *See United States v. Gilead Scis., Inc.*, No. 21-MC-

09005-SRB, 2021 WL 619761, at *2 (W.D. Mo. Feb. 17, 2021) ("Transferring the instant motion also serves the interests of judicial economy, particularly given the complexity and extensiveness of the underlying litigation.").

Moreover, the determination of the instant Motion—and the parties' contractual disputes in the Underlying Case—appear to require an understanding of the medical devices for which Dr. Schell alleges he is entitled to royalty payments under the royalty agreements. As Judge Brown explained at a recent hearing, "[a]n issue to be decided in [the Underlying Case] is whether or not [Dr. Schell] was involved and whether or not he has rights in subsequent iterations of the OLLIF" medical device. [#5-2 at 20:13-15] The instant Motion seeks to limit the questioning of Movant, in part, by arguing that Amendia should not be permitted to question Movant regarding Quandary and medical devices developed by Quandary, including a medical device called "KeyLIF." [#1 at 4, 11-14] This Court thus would be required to educate itself about the complex claims and medical devices at issue in the Underlying Case to determine the potential relevance of such testimony to resolve the instant Motion. Judge Brown, on the other hand, already has a detailed understanding of the claims and technology at issue in the Underlying Case. [*See* #5-2 at 21:6-25 (Judge Brown describing the medical devises at issue)] Indeed, Judge Brown has already considered one of the main issues raised in the Motion—whether Amendia should be permitted to question Movant about KeyLIF and other Quandary medical devices. Judge Brown explicitly stated at a recent discovery hearing in the Underlying Case that "based upon [his] knowledge of [the Underlying Case], . . . the KeyLIF device is sufficiently similar to the OLLIF device that [Movant] ought to answer

questions about it."[4]  [*Id.* at 24:23-25:3; *see also id.* at 27:14-18 (Judge Brown stating that Amendia "ought to get to know how something that looks a lot like and has a lot of the same characteristics of their OLLIF device would up on the website of Dr. Schell's son's company")]  Even more express, Judge Brown stated:  "if I get a call because [Movant] is refusing to answer questions about his involvement with Quandary and the KeyLIF device, it is probably going to be my conclusion that that is sufficiently relevant to [the Underlying Case] that he ought to answer those questions."  [*Id.* at 24:3-9]

Movant argues that Judge Brown's comments about the relevancy of his testimony do not constitute a ruling on the issue and that Judge Brown has not commented on "the full scope of issues that will arise during Movant's deposition, including the scope of the attorney client privilege or work product protection."  [#5 at 2]  Regardless of whether Judge Brown's comments may be construed as a "ruling" on the issue, the comments clearly demonstrate both the complexity of the issues and Judge Brown's superior knowledge of those issues.  *See Weddle*, 2019 WL 1620815, at *5 (finding that issuing court's superior knowledge of issues weighed in favor of transfer even where issuing court had not yet ruled on issues).  The Court thus easily concludes that Judge Brown will be able to resolve more quickly and efficiently the relevance (and potentially-related privilege

---

[4] In the Motion, Movant argues that Amendia should not be permitted to ask questions about Quandary's medical devices because such testimony "relates to a potential counterclaim against Dr. Schell or third-party claim against Quandary for patent infringement" and "[n]o such claim has been brought in the Underlying Litigation."  [#1 at 13]  Judge Brown has indicated, however, that he may permit Amendia to assert a counterclaim with regard to the KeyLIF device, depending on the testimony elicited.  [#5-2 at 25:9-13]  Judge Brown thus is in a much better position to determine the scope of the questioning that should be allowed on these topics.

9

and work product) issues presented in the instant Motion.[5] *See United States v. Gilead Scis., Inc.*, No. 21-MC-09005-SRB, 2021 WL 619761, at *2 (W.D. Mo. Feb. 17, 2021) ("Furthermore, the presiding judge in the [underlying case] . . . is particularly and uniquely familiar with the circumstances of this case" and thus "is in a better position to answer the issues raised by the instant motion, including questions of relevancy and whether the request is overly broad or burdensome.").

The Court further finds that transfer will assist in avoiding the disruption of Judge Brown's management of the Underlying Case. Discovery in the Underlying Case is currently set to close on June 11, 2021. [Underlying Case, #97] Given Judge Brown's superior knowledge of the Underlying Case and, in particular, his consideration of some of the very issues presented in the Motion, Judge Brown will be able to more quickly and efficiently resolve the instant Motion and thus avoid or limit disruption to the current schedule in the Underlying Litigation. See *US Plywood Integrity Coal.*, 2021 WL 409968, at *3 (finding that "[n]ot transferring the [subpoena-related motion] risks 'disrupting the issuing court's management of the underlying litigation' and interfering with the discovery and resolution timeline of the [underlying litigation]" where the discovery deadline was only two and a half months away); *In re Cassell*, No. 15CV07433RWSSDNY, 2016 WL

---

[5] Movant testified that he advised Dr. Schell on contract and litigation issues, including Dr. Schell's claims against Amendia. [#1-1 at ¶ 5] Judge Brown's familiarity with the Underlying Case and the factual issues presented by Dr. Schell's claims may be useful in resolving issues of distinguishing between business and legal advice, potential waiver, and Amendia's potential need for discovery that constitutes work product. *See In re Cassell*, 2016 WL 3645166, at *2 (finding complexity of issues supported transfer where motion raised "not only standard issues of whether the document involved an attorney-client communication but rather more searching inquiries about whether the advice was legal or business . . . , whether [a party had] waived her attorney-client privilege by putting certain matters at issue, how much of the withheld communications need to be logged and how, etc.").

3645166, at *3 (D. Utah June 30, 2016) (finding that judge in issuing court "because of his familiarity with the underlying case, [would] be able to rule on [subpoena-related motion] more quickly . . . and avoid unnecessary extensions of the discovery schedule").

Movant argues that any efficiency that would result from the transfer of the Motion to the Northern District of Georgia "is outweighed by the burden on Movant."[6]  [#5 at 3] The only burden identified by Movant, however, is the possibility that counsel may be required to travel to the Northern District of Georgia for a hearing on the Motion, which would be costly and cause additional burden due to the risks associated with travel during the COVID-19 pandemic.  [*Id.*]  Although Movant contends that Judge Brown "generally conducts discovery hearings in person" [*id.*], Judge Brown has conducted two of the five discovery hearings in the Underlying Case by video teleconference.  [Underlying Case,

---

[6] Movant notes, however, that he would consent to the Court transferring the Motion to the Northern District of Alabama, where Quandary's motion to quash is currently pending. [#5]  Movant, however, fails to cite any authority for the Court to transfer the Motion to the Northern District of Alabama.  Rule 45(f) provides only for transfer "to the issuing court," which is the Northern District of Georgia.  Movant's willingness to have the Motion considered in the Northern District of Alabama undermines any argument about the burden of having the Motion resolved in a non-local forum.  Instead, it appears that Movant may seek to avoid transfer to the Northern District of Georgia only because Judge Brown has already expressed his views on the relevance of Movant's testimony to the Underlying Case.  Although Movant argues that transfer to the Northern District of Alabama is necessary to avoid potentially inconsistent rulings, because the issues raised in Quandary's motion to quash are similar to the issues raised in the instant Motion [*id.* at 4], these same issues also may arise in the Underlying Case.  As Judge Brown recognized, to the extent Quandary's motion to quash is granted, Amendia "may try to seek some of that information whenever they can [in the Underlying Case], so . . . that outcome could impact [the Underlying Case]." [#5-2 at 72:12-15]  Similarly, to the extent this Court retained and granted the Motion, Amendia may then seek information from Dr. Schell similar to that being sought directly from Dr. Schell's son through the subpoena. [*See, e.g.*, *Id.* at 14:21-24 (Amendia counsel alleging that Dr. Schell loaned Movant money to acquire the assets of a spine company that was then acquired by Quandary); #1-1 at ¶ 5 (Movant testifying that he advised Dr. Schell on contract and litigation issues, including Dr. Schell's claims against Amendia)]

11

#50, 58] Particularly given that the 2013 Note "encourage[s] [judges] to permit telecommunications methods to minimalize the burden a transfer imposes on nonparties," there is no reason to believe that Judge Brown would not accommodate Movant's request to participate in any hearing on the Motion by remote means. Indeed, Judge Brown explicitly stated that he would be available by telephone to address any issues that may arise during Movant's deposition. [#5-2 at 10:8-13] The Court thus finds that transfer will impose only a slight, if any, burden upon Movant and that any such burden is clearly "outweighed by the interests of fairness, consistency, judicial economy, and speed of resolution."[7] *In re Cassell*, 2016 WL 3645166, at *3; *see also Weddle*, 2019 WL 1620815, at *6 (finding "a comparatively minimal burden on [the movant] weigh[ed] in favor of transferring" where judge in issuing court had previously conducted hearings telephonically).

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Clerk of Court shall **TRANSFER** this matter to the United States District Court for the Northern District of Georgia pursuant to Federal Rule of Civil Procedure 45(f) and **CLOSE** this case. **IT IS FURTHER ORDERED** that counsel for Amendia shall promptly file notice of this Order in the Underlying Case.

DATED:  April 20, 2021                                    BY THE COURT:

                                                                              s/Scott T. Varholak
                                                                              United States Magistrate Judge

---

[7] The Court further finds that any burden on Movant is mitigated by the fact that Movant voluntarily involved himself in the Underlying Case by representing Dr. Schell in connection with the Underlying Case. [*See* #1-1, ¶ 5]